Thank you, Your Honor. May it please the Court, Richard Kluh for Evelio Cervantes-Conde, exactly as the Court said. Well, I tried to practice my Spanish just to be here for you. I may lapse into calling me either Cervantes or Conde. Okay. But before I go any further, I want to ask if I could reserve three minutes for rebuttal. Sure, you can, and just watch your own clock, and of course that yellow light will tell you what to do, but we might be asking you questions, and you'll just feed in. Yes, Your Honor. All right. The unusual posture of this case deals with the disproportionality of the introduction of evidence. The first three and a half days of the trial are spent introducing a series of years-old events that did not result in either conviction or finding of guilt in any way on the part of Mr. Cervantes. A link in three of those prior instances was a dog sniff, and so what I like to look at this case in terms of describing it as is a tale of prior acts that wags the dog sniff case that the government presented at trial, because that's what it really came down to at trial as well. They tried to use a dog sniff at trial to help, because the only thing they had asked Mr. Cervantes at trial was he had breakfast with a person who was conspiring, who was engaged with an informant to purchase drugs. At that breakfast, didn't your client ask questions about how drugs and money were transported? Well, what — Can we start with a yes or no? He did not ask any questions about, in general, about how drugs and money were transported. There was an assertion. All the testimony from the agent was in a conclusory form. He didn't — he said he was supposed to record it. He didn't record it. Again, he didn't record — that was part of the problem with the case, the government's case. They didn't have any recordings of anything, so they certainly didn't have any recordings of this. Did your client at this meeting engage in a discussion about how to transport — how drugs and money were transported? I would say no. What he did was the following. The agent said — asked the question to Mr. Martinez, saying, well, have you ever shipped drugs by parcel post or by FedEx? And what Mr. Conde may or may not have said at that point could have been something like, what? That's — because it wasn't described, what he said. What was — what was said was he — he wanted him to elaborate. What does that mean? It's — it was vague, conclusory testimony. Does that mean, like, what? You send drugs by parcel, by FedEx, or something like that? Then there's — then there's a — there's one other additional interaction that the agent — that conversation, is your client being interested or disinterested in the transportation of drugs and money? I — there's no question that if the jury believed the unrecorded recollection of the agent that was not given in any verbatim sense, that they could have inferred that — made that inference. They also could have inferred that Conde went to breakfast with Martinez, who had a great code with — about the — with the undercover agent, and that he was there maybe deciding whether to get involved or not, or maybe deciding if he was interested or not, or maybe deciding just how crazy this agent is. Well — And that's frequently what happens. That's how people decide whether to get into deals. What worries me about this is that I have seen your argument, and I read it very carefully, but then I tried to think about, well, I'm on — I mean, I was a district judge, so I remember letting in evidence and not letting in evidence. And yet, when I'm on appeal, and I'm just reading this record and trying to decide, what's my standard of review? Well, the — the abuse of discretion standard of review — Abuse of discretion, isn't it? It is, and that's almost — Even — and even with abuse of discretion, then there's a second analysis to the 403B analysis, correct? Because there was some limiting instruction given as to the — what came in and what did not come in, wasn't there? That's — that's true. Errors can be overcome to some extent by precautionary — By the precautionary instructions. And so I guess here's what we've got. We've got a tough decision on abuse of discretion, and then we look at 403, which says, you know, if there's unfair prejudice, that might be another reason you wouldn't let it in. But even looking at that, it seemed to me the district court issued a multiple — multiple limiting instructions and then said, I think I'm going to let this in. Your Honor, I — I — like, Your Honor, I've had a lot of experience in cases. I'm 30 — 34 years now in criminal cases, 35. You don't look quite as old as I, but I'll be glad to give you whatever you want there. I've never seen a case open up with three-and-a-half days and eight witnesses of testimony about events that didn't even establish somebody had done anything wrong. And so this case, I think, really is — if there — if the abuse of discretion standard is — exists, then this is the case for the Court to do the weighing. And — Well, one of your — your client's defense is that he was an innocent bystander. He was just there at breakfast, didn't really participate in the conversations. I think it's difficult to dispute that on at least some of these prior incidents, the evidence tends to demonstrate a material point. So is your argument, then, that perhaps the government has the right to introduce one or two, but that cumulatively was just too much and it's more of a 403 argument? Well, as some of them, we clearly agree that there is a greater dispute about whether it was relevant. In one of these cases, there's no dog sniff at all. There's no connection to drugs at all. It's just they want to show he was stopped and he had gold jewelry. And again, you have witnesses coming in just to prejudice him on that. On another incident, you have the dog handler saying, based on his experience, that the sniff didn't really — because it was false, there was no drugs, you really couldn't say anything from it. So there's a variation as to the evidence. As to all of the evidence, though, they were — basically what they did was they had — they put on five insufficient cases in order to try to convince the jury that there's enough to go with the one insufficient case they had. But just a minute, it seems to me that your client said, well, now just a minute, I was an innocent bystander here. So innocent bystander is an appropriate exception to 404B to try to say, well, you're not an innocent bystander at all. So again, we're back to those old — that worry that I have when your client's the one who's presenting the defense of innocent bystander, doesn't know anything about this, and then the judge, in his discretion, being there at the trial, seeing it, knowing what's going on, decides this is fine given what your client has suggested is his defense, and then gives some limiting instruction. And again, all of those — I have to give deference to the district court on his decision. So I'm having a tough time with your argument. I mean, you can come forth and tell me I've never seen it before. You can come forth and say this is not normal. But when you're saying is it implausible, is it totally out of the possibility that the district court could see this differently in this kind of a situation, and then the limiting instructions which limit the prejudice, if you will, in all of our decisions, that's the worry that I have. I understand there's a line drawing involved in creating — in dealing with the word unfairness and dealing with these issues. I think that the line was crossed here. I think that there's — you have to balance, again, how minimal — basically, it's not just they had a weak case. They had a weak case because they messed up all sorts of investigative elements. And so, basically, they wanted to come forward and say, oh, well, they had a better case in Florida, even though he was acquitted, so let's try to go after that one. And they — well, they stopped him a bunch of times and under suspicious circumstances, so let's bring all that in. And then the way they use it in closing, I think it's the combination of events here that you will find in no other case, and I urge the Court to reverse. Thank you very much, Counselor. That please the Court. David Flanagan for the United States. I don't see the — oh, the green light's here. There's no question about it, but the evidence before the jury in this case was that Mr. Cervantes participated in a conversation at Denny's where they talked about a truck being used to haul drugs and money. And I would refer the Court to page 230 of the record where Mr. Soto says, what Mr. Cervantes and Mr. Michel Martinez had told me was that the money that the buyers used is shipped the same method as the method that the cocaine was shipped to Florida via tractor-trailer. The defense in this case was that Agent Soto basically lied, and they brought in from prison the testimony of Mr. Martinez to say that, the defendant was merely present for an opportunity to try to purchase a trailer for the truck. So the real issue before the jury was knowledge on the part of Mr. Cervantes. Was he just merely present, innocently present as he was claiming? And the 404B evidence was brought in to rebut that claim of mere presence. I realize there is the suggestion that it was perhaps cumulative, that it was perhaps too much, but if you look at Huddleston, United States v. Huddleston, it talks about looking at all of the evidence, all of the 404B evidence, how it relates, interlocks one with the other, and how it relates to the substantive offense being charged as well. I have a couple of concerns. Perhaps you can address them. One is that in one of these instances, you would know it better, I think, than probably the court. In one of these instances, he was found with some cash, right, that was masked in a certain way? Yes, sir. Actually, in two of the prior bad acts. I was just looking for a yes or no on that. Yes, sir. And I'll get to my question in just a second. Yet at the end of the day, the United States government gave him back a substantial portion of the cash, and there's no explanation in the record for why that occurred. Well. Is that correct, that there's no explanation? That is correct.  Anything you would tell me by way of explanation is going to be outside the record. And I don't know anything why it was returned. Okay. The other one that bothers me is that in the Miami situation, he was indicted, correct? Yes, sir. By a grand jury? Yes, sir. Went to trial? Yes, sir. And found not guilty? Yes, sir. And he was presumed to be innocent before he was indicted? Yes, sir. And after he was indicted? Yes, sir. And then he was acquitted? That is correct. Can you think of another 404B or a prior bad act case where acquitted conduct was used in this fashion? Yes, sir. And I believe I cited, or Mr. Bruce Ferg cited a Supreme Court decision which stands for the proposition that even where a defendant is acquitted of prior acts, that those acts can be used in a subsequent case because the standard of proof is different. The standard of proof is beyond a reasonable doubt. And even if it's more than by a preponderance of the evidence, he should be found not guilty if it cannot be proven by a reason beyond a reasonable doubt. Whereas ---- It sounds like in your description of that case, the Court was weighing preponderance versus beyond a reasonable doubt? Yes, sir. And all you need is preponderance for a prior bad act? Actually, for a prior bad act, the Huddleston Court says that the judge or the appellate court looks to see whether it would sustain a finding by the jury that the case was proven by a preponderance of the evidence. They don't even have to weigh the evidence and say that they would determine that. So it's a very minimal standard to get into 404B materials. Give us an example in a drug situation of a prior bad act that would not be admissible. Would not be admissible? Well, I think you get to the balancing standard. Is it substantially more prejudicial than probative? I'm looking for an example. You caught me off guard here, but I would ---- That, by the way, is my job. Yes, sir. But I would say that if the case could not ---- if he was just pulled over and he had money and that was it and there wasn't a dog alert, there were no other facts which would show some sort of suspicion, then it could be said that it would not ---- it would be substantially more prejudicial than probative to get into that. So if Cervantes had been pulled over and no statement about the amount of money being carried, but a dog did alert, a sniffer dog did alert, but there were no charges and they gave him every bit of the money back, would that be admissible? Yes. I think whether they give the money back or don't give the money back is an irrelevant fact. That is some sort of decision. The relevant fact is that the dog sniff. The dog sniff is very relevant, especially if you have the certification and the training records for the dog to show that the dog is reliable. I've read that something like 30 percent of all bills in excess of $20 that anyone throughout the country carries has some evidence of drugs on it. There are cases even out of this circuit which talk about that, but there's a split of authority among the people who study this out. In fact, in our case here, there was a question by cross-examination by the defense attorney asking Agent or Officer LaChance what he thought about that, and he said in his own situation he had tested that theory with his own dogs and they did not alert on currency that had been around cocaine after a period of time given so it would dissipate, the smell would dissipate. So that's the evidence that we have before the court. Other than that, what you might read, you can read about a lot of different things, different theories that scientists have, but I think from what I've read in the cases, the standard belief right now is that the dogs do not actually alert to the cocaine itself, but they alert to some sort of chemical that is produced, byproduct that is produced that dissipates rapidly, therefore they would not alert to the currency, even though it may be true that much of the currency has been around cocaine sometime in the past. My worry in this case is that you'd agree with me, I guess, that Rule 404B would not allow this evidence to have been admitted to say that because the defendant was engaged in drug dealing in the past, he should be convicted. That is absolutely correct. So what we're really saying, and we're kind of putting this little construction on it, because he was engaged in drug dealing in the past with people that are also implicated here, he could not have been an instant bystander. That's the government's argument. That is correct. And yet you're going to have that many days of evidence come in at trial, which is totally, I mean, to be fair, when that kind of evidence comes into the trial, it's hard for anyone to separate it one from another. And jurors are easily taken, and I think that's counsel's argument. When putting in all that kind of evidence into the trial, maybe a couple of things may be at the right time, but, my gosh, this amount of time, how is it that the jury could have or that the judge could have thought that this was totally allowable? Well, because what happened in those prior bad acts interlocks with what happened in this case. Number one, the very trailer that Mr. Nehra, the co-defendant, pulled into Tucson, was being hauled by the defendant a few years before in Beaumont. We prove that by reference to the vehicle identification number. And that was brought in to Tucson by Nehra. Then also the defendant was in the company of Marin in Miami, where he himself made reference to having this truck with a secret compartment, the same truck that he makes reference to in this case at Denny's. And also the truck itself was brought from Miami to Tucson by Nehra. This is interlocking what happened in Beaumont. Then you have the situation in Conklin County, Texas, where he's driving with all the gold. He's in the company of Marin, the same person he was with in Miami, where he's talking about having this truck with a secret compartment. You have the same two people, Marin and Cervantes in El Paso, and that is where the dogs alert to the cash that they have, and they bring in Geraldo Nehra on the phone to claim that that money is his. So all of these facts are interlocking one with the other, and so it's not like it's just not related to what's going on in Tucson. But at best, it seems clearly prejudicial. That much evidence. Well, that's not the test, though. That's what prosecutors do. Everything that they bring in is prejudicial. Is the test. Is it substantially more prejudicial than probative? And I would submit it is not. And what is the standard of review? I apply to the district judge's determination of that question. Did the court abuse its discretion? Thank you. Thank you. I think you have a little bit of time left. I have 40 seconds. The page quote, which I think related back to the first question Judge Hawkins asked, I believe it's page 230, I asked the court to please look at it and look at the very page that the prosecutor cited. What he's talking about is the agent saying it seemed that Condi did this. It seemed that Condi was interested. And when the quote is about who said that thing that he said they said, it was Martinez and Condi. In other words, it was clearly Martinez who said it. And also the confusion. It's not Marin who's at this breakfast with Condi. It's Martinez. It's a completely different person. Marin's not involved in any way in this case. So the interlocking thing is really not true. What you had as a situation was the defense really was not just innocent bystander. If you look at her closing argument, what she says is, look at the law. Even when somebody knows people are conspiring, the question is, does that person then join? And that was the question here. Did he join? And they didn't prove that he joined. Instead, they proved that he was involved in other things. Thank you so much. Thank you, Counselor, for your argument. We will then, 11-10680, United States v. Cervantes Conde will be submitted.
judges: Hawkins, Smith, Nguyen